1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CYNTHIA B.,

                Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

CASE NO. C18-667 RAJ-BAT

**REPORT AND RECOMMENDATION**

Plaintiff appeals the ALJ's July 2017 decision finding her not disabled. The ALJ found degenerative disc disease, sacroiliitis, mild degenerative disc disease, and obesity are severe impairments; plaintiff retains the residual functional capacity (RFC) to perform light work with additional limitations; and plaintiff can perform past relevant work and other jobs in the national economy. Tr. 18-28.

Plaintiff contends the ALJ erred by (1) failing to find she has a severe mental impairment at step two; (2) not accounting for mental limitations in the RFC determination; (3) misevaluating the opinions of Stephanie Bric, OT, Andrea Marshall, D.O., and DDS reviewing doctors Dan Donahue, Ph.D., and Patricia Kraft, Ph.D.; (4) discounting plaintiff's testimony as inconsistent with her activities; and (5) incorrectly stating "the standard for SSA disability is the most any person can do." Dkt. 1-2.

1    For the reasons below, the Court recommends **REVERSING** the Commissioner's final

2 decision and **REMANDING** the case for further administrative proceedings under sentence four

3 of 42 U.S.C. § 405(g).

### DISCUSSION

5    The Court will reverse the ALJ's decision only if it is not supported by substantial

6 evidence in the record or if the ALJ applied the wrong legal standard. *Molina v. Astrue*, 674 F.3d

7 1104, 1110 (9th Cir. 2012). The Court may not reverse the ALJ's decision on account of an error

8 that is harmless. *Id.* at 1111. Where the evidence is susceptible to more than one rational

9 interpretation, the Court must uphold the Commissioner's interpretation. *Thomas v. Barnhart*,

10 278 F.3d 947, 954 (9th Cir. 2002).

11 **A.    The ALJ's Mental Health Findings**

12    In the first two claimed errors, plaintiff contends the ALJ erroneously found affective

13 disorder, personality disorder, and alcohol and drug addiction in remission are non-severe

14 impairments, Dkt. 10 at 2-5, and failed to account for mental limitations in the RFC

15 determination by misevaluating the opinions of Drs. Diamonti, Kraft, and Donahue, and Heather

16 Krantz, MA. *Id.* at 3-5.

17    The ALJ must provide clear and convincing reasons to reject an uncontradicted medical

18 opinion, or specific and legitimate reasons where contradicted. *Lester v. Chater*, 81 F.3d 821,

19 830-31 (9th Cir. 1996). The ALJ must do more than offer her conclusions; she must also explain

20 why her interpretation, rather than the doctor's interpretation, is correct. *Orn v. Astrue*, 495 F.3d

21 625, 632 (9th Cir. 2007).

22    Ms. Krantz is not a doctor and thus is not an "acceptable medical source." "*See* 20 C.F.R.

23 § 404.1513(a). The ALJ must give germane reasons for rejecting opinions from other sources.

1    *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). The ALJ may also evaluate other medical

2    source opinions using the same factors applied to evaluate medical opinions of acceptable

3    medical sources. SSR 06-03p.

        ***1.    Dr. Diamonte***

5           Examining doctor Christina Diamonte, Psy.D., opined plaintiff was markedly limited in

6    the ability to perform activities within a schedule, complete a normal workweek, maintain

7    attendance, and be punctual without special supervision; and that she was moderately limited in

8    the ability to perform routine tasks, adapt to changes, make simple work decisions, work in a

9    group and maintain appropriate behavior. Tr. 735-39.

10          Plaintiff contends the ALJ erroneously rejected these opinions. The contention fails. The

11   ALJ found the doctor failed to "adequately explain" why plaintiff is so limited. Tr. 25. This is a

12   valid reason to discount a doctor's opinion because an ALJ may reject a medical opinion that is

13   brief, conclusory, and inadequately supported by clinical findings. *Bayliss v. Barnhart*, 427 F.3d

14   1211, 1216 (9th Cir. 2005). Here, Dr. Diamonte provided no explanation regarding how or why

15   her clinical findings translated to the marked or moderate limitations she assessed.

16          Plaintiff argues the doctor provided "detailed examination notes," but fails to indicate

17   what in those notes supports or explains the limitations assessed. Plaintiff has the burden of

18   showing harm and fails to do so here. *See Molina v. Astrue*, 674 F.3d at 1111 (court may not

19   reverse unless error is harmful, and claimant has burden of showing harm).

20          The Court notes Dr. Diamonte recorded plaintiff's statement that she had difficulty

21   dealing with people and responding to stress, Tr. 738. But these limitations are at odds with the

22   doctor's note that plaintiff's typical day includes living at a woman's shelter and "looking for

23   work and housing," and "taking care of appointments," which indicate she can deal with people,

1  and work toward constructive goals despite living under less than desirable circumstances. Tr.

2  736.

3      Plaintiff also argues even if Dr. Diamonte did not provide an explanation, her opinion is

4  consistent with the opinion of Heather Kranz, M.D. Dkt. 15 at 3. However, as the ALJ indicated,

5  Dr. Diamonte did not review any treatment records. Tr. 25. Thus the doctor's opinion is not

6  based upon or reflective of Ms. Kranz's opinion. Further, Ms. Kranz provides no explanation in

7  support of her source statement opinion that plaintiff is moderately to markedly limited in

8  numerous functional categories. Tr. 830-31. Hence, Ms. Kranz's opinion cannot be relied upon

9  to "explain" Dr. Diamonte's findings, and the mere fact her opinion is similar to Dr. Diamonte's

10  opinion is alone insufficient to support the doctor's opinion.

11      The ALJ also discounted Dr. Diamonte's opinion as inconsistent with her ability to work

12  for 12 years as a florist, despite multiple hospitalizations, and self-harming and impulsive

13  behavior. Tr. 25. An ALJ properly may discount a doctor's opinion that is inconsistent with a

14  claimant's work history. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).

15      Plaintiff contends her past ability to work is a poor measure because her mental condition

16  has worsened since the time she worked. Dkt. 15 at 2-3. Dr. Diamonte's report undercuts this

17  argument. Dr. Diamonte noted plaintiff was diagnosed bi-polar in 1980; plaintiff was "really

18  depressed"; plaintiff tried killing herself in the past; plaintiff had anxiety, frustration and wanted

19  to hurt herself; plaintiff saw a psychologist weekly in the 90's, and heard voices; plaintiff had

20  issues with friends and relationships in the late 1990's; plaintiff was in abusive relationships; and

21  plaintiff abused alcohol and controlled substances. Tr. 735-36.

22      Contrary to plaintiff's contention, Dr. Diamonte's report indicates plaintiff's mental

23  health problems improved by the time the doctor saw her. The doctor noted plaintiff was no

longer hearing voices and was not actively suicidal, Tr. 739; plaintiff's speech was logical and

coherent, and she was cooperative and had a good attitude, Tr. 738. Also as noted above plaintiff

was living in a shelter and on a daily basis looking for work and housing. Tr. 736.

The ALJ gave other reasons to discount Dr. Diamonte's opinion which need not be

discussed. Even if the other reasons are erroneous, the error would be harmless. *See Carmickle v.*

*Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (including an erroneous reason

among other reasons to discount a claimant's credibility does not negate the validity of the

overall credibility determination and is at most harmless error where an ALJ provides other

reasons that are supported by substantial evidence). The Court accordingly recommends

affirming the ALJ assessment of Dr. Diamonte's opinion.

### 2.   *Drs. Kraft, and Donahue*

The ALJ gave some weight to the opinion of non-examining doctors Kraft and Donahue

that plaintiff has medically determinable mental impairments. Tr. 23. The ALJ rejected their

opinion that plaintiff has mild to moderate limitations on the grounds the doctors also opined

plaintiff had the capacity to perform past relevant work as a florist. *Id.* The ALJ concluded

plaintiff's ability to perform this past job is consistent with mild limitations, and not a severe

impairment. *Id.*

Plaintiff does not set forth how or why the ALJ harmfully erred in assessing the non-

examining doctors' opinions. She implies the ALJ should not give the opinions controlling

weight, which is something the ALJ did not do. Dkt. 10 at 3. As she has failed to carry her

burden of establishing harm, the Court recommends affirming the ALJ's determination.

1          **3.      *Heather Krantz, MA***

2          Ms. Krantz opined plaintiff has numerous moderate and marked limitations. Tr. 829-30.

3   The ALJ discounted her opinions as inconsistent with the longitudinal record, objective evidence

4   and plaintiff's activities. Tr. 24. Plaintiff argues the ALJ erred in relying on the "normal mental

5   status examination" findings Ms. Krantz recorded in order to reject her opinion, i.e. the ALJ

6   erred in finding the opinion inconsistent with the record or objective findings.

7          But, an ALJ may properly reject a medical opinion that is inconsistent with the record

8   and not supported by objective evidence. *See Meanel v. Apfel*, 172 F.3d 1111, 1113-14 (9th Cir.

9   1999). Here, the ALJ noted Ms. Krantz's treatment record indicates plaintiff "is consistently

10  alert, oriented, etc." Tr. 24. In other words, the ALJ found Ms. Krantz's treatment records

11  indicate plaintiff is not as limited as Ms. Krantz opined in her "Source Statement."  Moreover,

12  Ms. Krantz's treatment records, Tr. 832-868, do not contain findings or observations consistent

13  with the limitations she assessed in the source statement. At various points Ms. Krantz noted

14  plaintiff's sadness and irritation following her father's death, but Ms. Krantz also noted

15  plaintiff's positive response to medications, and made no observations or findings consistent

16  with the marked or moderate limitations she assessed. The Court accordingly cannot say it was

17  unreasonable for the ALJ to conclude Ms. Krantz's medical source opinion does not stack up

18  with her treatment records.

19         The ALJ gave other reasons to discount Ms. Krantz's opinion but as noted above, even if

20  the other reasons are erroneous, the error is harmless. The Court accordingly recommends

21  affirming the ALJ's assessment of Ms. Krantz's opinions.

22         In sum, although the ALJ at step two found none of plaintiff's mental impairment are

23  "severe," the ALJ nonetheless considered plaintiff's mental limitations in assessing her RFC.

Plaintiff argues the ALJ misevaluating the opinions of Drs. Diamonti, Kraft, and Donahue, and Heather Krantz, MA., and consequently omitted mental limitations from the RFC determination. But, as discussed above, the ALJ gave at least one valid reason supported by substantial evidence to discount the opinions of the doctors and Ms. Krantz. The Court accordingly recommends affirming (1) the ALJ's assessment that plaintiff's mental impairments are not severe impairments for purposes of a step two determination; (2) the ALJ's evaluation of the medical evidence regarding plaintiff's mental limitations; and (3) the ALJ's RFC determination as to her mental limitations.

**B.      The ALJ's Assessment of Medical Evidence Regarding Physical Limits**

  *1.      Stephanie Bric, OT and SSA Disability Standards*

Ms. Bric performed an occupational functional evaluation, in which she opined plaintiff was limited to sedentary work. Tr. 1032. The ALJ rejected Ms. Bric's opinions on the grounds that the tests, and other assessments Ms. Bric utilized relied largely upon plaintiff's self-reported limitations, i.e., the "Oswestry Disability Index and grip and lifting testing. Tr. 24.

The ALJ may reject a medical opinion, that is based "to a large extent" on a claimant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). However, when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion. *See Ryan v. Comm'r of Soc. Sec*., 528 F.3d 1194, 1199–1200 (9th Cir. 2008). Additionally, an ALJ does not provide clear and convincing reasons for rejecting a medical opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports her ultimate opinion with her own observations. *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001).

Here Ms. Bric did not question plaintiff's credibility. There is no indication Ms. Bric did not perform a professional occupational functional evaluation using standard tests and assessments, and that her opinions are based upon nothing more than the regurgitating plaintiff's claims. To adopt the ALJ's rationale grants the ALJ the power to reject any and all occupational functional evaluations, for every evaluation would suffer from the defect the ALJ claims here: that at some level, the evaluation results rely upon the claimant's statements. ALJ accordingly erred in rejecting Ms. Bric's opinions on the grounds that they were overly reliant on plaintiff's statements.

The ALJ also discounted Ms. Bric's opinion plaintiff has less than 10% average grip strength on the grounds there is no objective medical explanation for this finding. Tr. 24. To say an opinion is not supported by objective findings is an insufficient and conclusory reason. *See Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir.1988).

The ALJ also rejected Ms. Bric's opinion plaintiff can walk ½ to 1 hour a day because plaintiff claimed she could only walk ½ mile with difficulty. Tr. 24. The ALJ found plaintiff's ability to walk ½ mile is inconsistent with Ms. Bric's opinion that plaintiff "is unable to stand or walk more than once or twice a day." *Id.* Substantial evidence does not support this finding. Ms. Bric did not find plaintiff could stand or walk once or twice a day. Rather she stated that as to standing:

> During this evaluation, client stood for up to 9.5 minutes before requiring a sitting break. Client demonstrates the ability to carry out standing ¼ hours at a time, ½ to 1 hours in an 8 hour day.

Tr. 1035. And as to sitting, Ms. Bric stated:

> During this evaluation, client sat for 35 minutes without complaint. Client demonstrated the ability to carry out sitting ½ to 1 hours at a time, 2 to 4 hours in an 8-hour day.

REPORT AND RECOMMENDATION - 8

*Id.* As noted above, Ms. Bric's opinion about plaintiff's standing and walking limitations were based upon standing and walking tests she performed on plaintiff, not plaintiff's statement about the distance she could walk.

And finally, the ALJ rejected Ms. Bric's opinion noting plaintiff's score on the pegboard test was below 1% of all tests, a finding not supported by the medical records. Tr. 24. As noted above a conclusory statement, such as "not supported by medical records," is an insufficient basis to reject an opinion. Further, there is no indication that some other provider performed the pegboard or some other similar test and arrived at a contradictory result. The ALJ accordingly erred.

In short, the ALJ failed to provide legally sufficient reasons supported by substantial evidence to reject Ms. Bric's opinions. On remand, the ALJ shall reevaluate Ms. Bric's opinions. In addressing Ms. Bric's opinions, the ALJ stated "the standard for SSA disability is the most that any person can do, not the least." Plaintiff claims this standard is incorrect. The Court need not tarry over the argument as the ALJ erred in rejecting Ms. Bric's opinions, as discussed above and on remand must reassess the opinion.

### 2.    *Andrea Marshall, D.O.*

Plaintiff argues the ALJ's "use" of Dr. Marshall's opinion is invalid. The record belies the claim. The ALJ gave "some but not great weight" to Dr. Marshall's opinions. Dr. Marshall found plaintiff mainly functioned normally. But the ALJ implicitly rejected the doctor's view plaintiff was "normal," i.e., lacking any limitations, by stating plaintiff has degenerative disc disease and mild degenerative joint disease, has had back surgery, is obese and suffers back pain, all of which limit her to light work. Tr. 23. As the ALJ placed little weight on Dr. Marshall's

1    opinions, and plaintiff fails to explain how the ALJ's treatment of the opinion harmed her, the

2    Court recommends affirming the ALJ.

3        ***3.    ALJ's Reliance of DDS doctors in the RFC determination***

4        Plaintiff argues the ALJ's finding she can perform light work is based upon the opinions

5    of DDS doctors who did not have access to all of plaintiff's medical records, including Ms.

6    Bric's OT functional evaluation. Dkt. 10 at 9. The Court need not resolve this because as

7    discussed above the ALJ harmfully misevaluated Ms. Bric's opinions and the matter should be

8    remanded to reevaluate her opinions.

9    **C.    Plaintiff's Testimony**

10       Plaintiff contends the ALJ harmfully erred by discounting her testimony as inconsistent

11   with certain activities, such as use of public transport, going to the store and appointments, and

12   visiting family. Dkt. 10 at 7-9. However, as the Commissioner points out, the ALJ also rejected

13   plaintiff's testimony about her physical limitations finding the testimony inconsistent with the

14   medical evidence, Tr. 21. Plaintiff has failed to show how the ALJ erred in this respect and thus

15   failed to carry her burden to establish harm.

16       As to plaintiff's testimony about her mental limitations, the ALJ noted among other

17   things that plaintiff claims mental health problems since her teenage years but nonetheless

18   worked successfully for over 10 years. Tr. 22. As discussed above, this is a valid reason

19   supported by substantial evidence to discount plaintiff's mental health limitations. The Court

20   accordingly recommends the ALJ assessment of plaintiff's testimony be affirmed.

21                                    **CONCLUSION**

22       For the reasons above, the ALJ erred in evaluating Ms. Bric's opinions. The error was

23   harmful because the limitations Ms. Bric assessed were not fully addressed in the RFC

REPORT AND RECOMMENDATION - 10

determination regarding plaintiff's physical limitations. Where the ALJ harmfully errs, the Court has the discretion to remand for further proceedings or to award benefits. *See Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). Only in rare circumstances should a case be remanded for benefits. *See Treichler v. Colvin*, 775 F3d 1090, 1099 (9th Cir. 2014). The Court may remand for an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)). If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded for further proceedings.  *McCartey*, 298 F.3d at 1076.

Here, additional proceedings are required to allow the ALJ to properly reassess Ms. Bric's opinions about plaintiff's physical limitations, a responsibility the Court cannot fulfill in the first instance on appeal. The Court accordingly recommends the Commissioner's final decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g) as set forth below:

The Court recommends affirming the ALJ's step two findings, plaintiff's testimony, and evaluation of the medical evidence with the exception of Ms. Bric's opinions. On remand, the ALJ shall reassess Ms. Bric's opinions, develop the record and reassess plaintiff's RFC as necessary, and proceed to steps four and five as appropriate.

A proposed order accompanies this Report and Recommendation.  Any objection to this Report and Recommendation must be filed and served no later than **December 18, 2018.** If no objections are filed, the Clerk shall note the matter for **December 21, 2018**, as ready for the Court's consideration. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's

consideration 14 days from the date the objection is filed and served.  Objections and responses

shall not exceed ten pages. The failure to timely object may affect the right to appeal.

DATED this 4th day of December, 2018.

_____

BRIAN A. TSUCHIDA
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION - 12